# THERESA TROST, AS GUARDIAN AD LITEM OF XAVIER BREY, INCOMPETENT v. THERESA BREY AND OTHERS.[1]

July 6, 1923.

No. 23,407.

**Annulment of incompetent's deed.**

1. In this action to annul a deed made by an alleged incompetent, without consideration, to a relative for the protection of the incompetent, it is *held*:

(1) Even though the consideration recited in a deed is presumed to have been actually paid, and the assumption by the grantee of mortgages on the premises conveyed constitutes in law a valuable consideration, the grantor may show that no consideration in fact passed and that the grantor, and not the grantee, paid the mortgages.

(2) The court was justified in finding no consideration for the deed; that it was executed by an illiterate, ignorant, and weak-minded person, who, apparently, did not understand the transaction; and that it was obtained from him for the purpose of his protection, and not to deprive him of the property.

**Findings warranted annulment.**

2. The above findings and others, to the effect that, after the deed was so executed without consideration by a partially, if not wholly, incompetent person, in order to protect him, he the grantor, continued in possession of the land, farmed it, received the crops and paid the taxes, the same as before, justify the conclusion that the land still remained the grantor's and that the deed should be annulled.

**Findings not justly open to criticism.**

3. Certain findings criticised are not justly open thereto, being as definite and certain as the evidence permits.

**Evidence does not warrant imposition of terms.**

4. The record does not warrant the claim that cancelation of the deed should have been granted upon terms.

Action in the district court for Redwood county to annul a deed. The case was tried before Olsen, J., who made findings and ordered

[1] Reported in 194 N. W. 617.

that the deed be set aside. From the judgment setting aside the deed and annuling the final decree of the probate court in the estate of August Brey, deceased, defendants appealed. Affirmed.

*Alexander Seifert* and *Albert Hauser*, for appellants.

*Mathews & Mathews*, for respondent.

HOLT, J.

Action to cancel and annul a deed and a decree of the probate court insofar as it distributed the land conveyed to the heirs of the grantee in the deed. Findings were made in plaintiff's favor. The appeal is from the order denying defendant's alternative motion for amended findings or a new trial.

The action. is in behalf of Xavier Brey, an incompetent, by his guardian ad litem. The defendants are the wife and daughter, the heirs of the grantee in the deed attacked. The facts not in dispute are these: About 1886 Xavier Brey and his brother George came to Redwood county from Bavaria. George was married and had 4 children. The sons were Joseph, August and Ludwig, and the daughter Theresa, the guardian ad litem of Xavier. In 1891 an 80-acre farm within a mile or so from the farm of George was bought by or procured for Xavier, who was then past 40. There was a small shack on the place and Xavier made that his home. He has never married, and is now past 72 years old. His brother and nephews, above named, assisted him in running the farm and in business transactions. In November, 1897, a deed to the farm was recorded, wherein Xavier was grantor and August Brey, his nephew, grantee. In 1918 August Brey died and his estate has been probated and this farm assigned to defendants by the decree of the probate court. George Brey and his son Joseph have been dead many years.

Upon what may be called conflicting evidence the court found that no consideration was paid for the conveyance of the farm to August Brey; that at the time it was made and ever since Xavier was illiterate, ignorant, and, if not wholly incompetent, he was mentally defective and weak-minded and unable to readily express himself and was easily influenced by those in whom he had con-

fidence; that the deed in question was executed at the suggestion of George Brey for the purpose of protecting Xavier, and was made and taken in good faith for said purpose and without intent to deprive Xavier of his property, but to protect him in the enjoyment thereof. There are other findings of an evidentiary character supporting those mentioned which need not be set forth, for, if those above recited are sustained, the judgment directed is clearly right.

It is true enough that a conveyance unquestioned for over 23 years should not be annulled except upon proof that satisfies the mind of the existence of the grounds alleged for annulment. The recital of the receipt of a certain sum by the grantor in a deed creates a strong presumption that such sum was actually paid. Still the law is well-settled here, as elsewhere, that it is not conclusive, 18 C. J. p. 442, § 549. The true consideration may be shown. That must include the right to prove no consideration. This rule has been applied to sealed instruments prior to the abolishment of private seals (G. S. 1913, § 5704), even though want of consideration could not destroy such instrument. Pray v. Rhodes, 42 Minn. 93, 43 N. W. 838. In the deed from Xavier, the grantee Brey assumed and agreed to pay two small mortgages existing on the farm. This in itself has been held to constitute the grantee a purchaser for a valuable consideration. Enkema v. McIntyre, 136 Minn. 293, 161 N. W. 587, 2 A. L. R. 411. However, the court finds that Xavier paid the mortgages, so that whatever consideration was contained in the assumption clause of the deed wholly failed.

The want of consideration, the mental condition of the grantor and the purpose of the conveyance, must all be given due weight, in order to determine whether an absolute title vested in August Brey. When that is done it is clear that equity must regard the farm as Xavier's and not August Brey's. His heirs stand in his shoes.

True, no fraud or overreaching was intended or practised by George Brey or August Brey upon Xavier. At the same time, no one can read the record without reaching the conclusion that Xavier never realized that he had made a conveyance of the farm. He was of such low mentality that he could not do even the ordinary farm

work without being told over and over again how to do it. Both parties were very much handicapped by the inroads of death and lapse of time in making their proof. The one who actively procured the deed to be made was Ludwig Brey, the son of George. He is still living. His testimony was clear and positive that his father told him to take Xavier to the banker at Echo, and have a deed of the farm drawn and executed by Xavier to one of his nephews; that he obeyed; that the deed was made to August Brey who was not present; that Xavier was asked by him to sign by mark; and that he took the deed home and gave it to his father. He further testified that no consideration was paid; that the deed was not read or translated to Xavier; that the witness did not believe Xavier understood what it meant; and that he did not attempt to explain because he knew it would be futile. It further appears that Xavier went home to his shack, and conducted the farm as before, paid the encumbrances and taxes, and received the proceeds of the crops. The facts found are really equivalent to a finding that there was no conscious execution or delivery of the deed by the grantor. He was as incapable of understanding what was done as in the case of Crane v. Veley, 149 Minn. 84, 182 N. W. 915.

There is some testimony contradicting the facts indicated in the foregoing, but the court was fully warranted in discarding such contradictory testimony as untrue or unreliable. The defendant herself admits that, after the death of her husband, Xavier received from her part of the proceeds from the crop raised on the farm. There is also evidence of her admission that the farm was Xavier's and that she told him to pay the taxes thereon. A number of tax receipts issued to August Brey were produced, but there was no evidence that Brey had paid the same from his own funds. That a great many of the tax receipts are so made out is readily explainable by the fact that the deed being on record the land would be assessed in the name of August Brey. However, there were receipts to Xavier, and testimony from persons present when payment was made that Xavier continued to pay taxes after the execution of the deed. There is no evidence of any claim ever made by August Brey that he, and not his uncle, was the owner of the farm.

He died not long ago, and if he had claimed and treated this farm as his own, testimony of such claim ought to have been available. The present husband of defendant, Carl Brau, testified that Xavier was normal, that one time he was present when Xavier bought a horse without his brother's or nephews' assistance. But he would not deny that, when overseer of the road, he twitted Xavier about working out the road tax for land he had deeded to another, Xavier did not then unhitch his team and go to his brother George to find out about it. His answer was: "It might have happened, but I don't remember because he made many trips to August Brey and George Brey about it."

Under such circumstances as above set out the conduct of Xavier is so inconsistent with that of a person of ordinary intelligence that the mind is forced to the conclusion that he was wholly incompetent to be a participant in the transaction involving the disposition of his home, or else that he was entirely ignorant of what was being done. He was illiterate, understood no English and had difficulty in understanding his native tongue unless spoken in the dialect peculiar to the province whence he came. The character of incompetency here involved is different from that resulting from old age or insanity with somewhat lucid periods. Such was the situation in Trimbo v. Trimbo, 47 Minn. 389, 50 N. W. 350, and Shaughnessy v. Shaughnessy, 135 Minn. 262, 160 N. W. 769. All witnesses agree that there never was any noticeable difference in the intelligence and mental powers of Xavier from the time he arrived in the state till now, except that one or two witnesses say that within a year or two there have been indications of further mental failings.

The family of George Brey, apprehensive that some one might take advantage of Xavier's condition to defraud him of his farm, evidently procured the deed for his protection. The plan though crude was, no doubt, well meant. Had not the death of George Brey and August Brey intervened, the probability is that Xavier's title and ownership of the farm would never have been questioned.

Some of the evidentiary findings are criticised for uncertainty or duplicity. But a trial court has to take the testimony the litigants produce and make findings accordingly. It was not a vital matter

whether Xavier in person paid the mortgages; the important fact was "that he either himself paid them or furnished the money" therefor as the court found. Nor was it determinative of the case to prove that Xavier obtained all the crops subsequent to the making of the deed. Proof of the receipt of some of the crops to that extent tended to show that the parties did not understand the deed to have been an absolute transfer of title. We think the evidence justifies the findings made, and that, insofar as important, they are sufficiently definite and certain.

The claim is asserted here that the trial court should not have canceled the deed except upon terms. The court below was not asked either by the answer or by motion for amended findings or conclusions of law for relief of that sort. The mere introduction of copies of tax receipts to August Brey, under the circumstances surrounding the making of this deed and the remaining in possession by Xavier, was not sufficient to compel a finding that August paid such taxes out of his own funds. As to the support furnished Xavier during his stay in the August Brey home, there was no agreement connecting the title of the land therewith, and, furthermore, if defendants have legal claim therefor a proper action will lie. Under the findings no claim can be asserted for return of any consideration or for the payment of the mortgages.

We consider the judgment right and it is affirmed.