## ARNE K. REBNE v. HELENE REBNE.[1]

January 28, 1944.

No. 33,543.

*Nelson & Plunkett,* for appellant.
*Baudler & Baudler,* for respondent.

[1]Reported in 13 N. W. (2d) 18.

YOUNGDAHL, JUSTICE.

Defendant appeals from a judgment declaring void and of no effect a deed executed by Arne K. Rebne conveying a certain farm to defendant.

On December 19, 1941, J. F. Schneider was appointed guardian of the estate of Arne K. Rebne and has continued in that capacity to the present time. Prior thereto, on July 1, 1941, the ward executed and delivered to defendant, his daughter-in-law, a warranty deed, subject to a life estate in himself, conveying to her approximately 120 acres of farm land situated in Mower county, Minnesota. No consideration was given for the conveyance of this property, which represented the only real estate owned by the ward.

At the time the deed was executed, defendant's husband, Clarence, the only son of Arne Rebne, accompanied his father to an attorney's office, where the instrument was prepared and signed. Defendant was not present when the deed was executed. Her husband advised her the same evening that such a deed had been prepared and signed, but she was not advised until a month later that she was the grantee in the deed. The deed was recorded by defendant's husband on December 15, 1941, four days prior to the appointment of Schneider as guardian of Rebne's estate.

On January 26, 1942, Rebne petitioned the probate court for an order restoring him to capacity and terminating his guardianship. This was denied.

The farm involved herein had been the Rebne family home, where the ward and his wife, now deceased, together with their only son, Clarence, and two daughters, Alma and Stella, resided for many years. After 1929 it appears that Clarence remained on the farm with his family. The daughters were then married and living in homes of their own. The record strongly indicates that the relations between Clarence and his sisters have been extremely hostile and bitter for a number of years. The ward for the past 12 years has made his home with his daughter Alma. Despite his advanced age of more than 80 years, he appears to have been in reasonably good health until September 1940, when he suffered a severe stroke.

The evidence is conflicting as to the extent of his physical and mental impairment resulting therefrom.

.This action was brought by the guardian for the purpose of cancelling and setting aside his ward's deed to defendant on the ground of mental incapacity and undue influence exerted by defendant's husband. The trial court found that at the time the deed was executed the ward was not competent to understand the nature or effect of the transaction, that he was mentally incompetent and unduly influenced by his son, Clarence, to the extent that his free agency had been destroyed, and that the deed was not that of the ward but rather that of defendant's husband. Conclusions of law were made and judgment entered accordingly.

The questions raised by this appeal are whether there is evidence reasonably tending to sustain the finding of incompetency and the finding of undue influence.

■ Whether the ward lacked the capacity to execute the deed is a question of fact. Every case of this character must necessarily be determined by a consideration of the special facts involved and the inferences to be drawn therefrom. On an appeal involving such fact questions, our consideration is restricted to determining whether there is any evidence reasonably tending to sustain the findings. Plaintiff, being the prevailing party in this case, is entitled to a consideration of the evidence most favorable to him.

While it is not our intention to review all the evidence on the issue of mental competency, it will suffice to point out that approximately ten months before the execution of the deed the ward suffered a severe stroke which materially affected him both mentally and physically. He talked incoherently, was unable to recognize some of his close relatives, suffered loss of memory, and on one occasion had difficulty finding his way home in the small village where he lived. A number of witnesses who had known and talked to him about the time the deed was executed testified that in their opinion he was incompetent to execute such deed. True, some of these witnesses were interested in the outcome of the suit, but the probative value of their testimony was for the trial court

to determine. Fortifying their testimony were the records of the probate court in the incompetency proceedings. The ward was declared incompetent upon his own petition five months after the execution of the deed. Approximately one month later, in January 1941, he petitioned the probate court for an order restoring him to capacity. This petition was denied. These two adjudications, heard by two different probate judges, were competent evidence for the trial court's consideration on the question of his mental capacity. McAllister v. Rowland, 124 Minn. 27, 144 N. W. 412, Ann. Cas. 1915B, 1006. We have carefully studied the record and have not overlooked the fact that there is substantial evidence to the contrary. We refer particularly to the testimony of the attorney who prepared the deed, and the positive assertion in the testimony of the ward himself at the trial that his son had "earned" the farm and he wanted him to have it. His testimony on the whole, however, was unsatisfactory. He was generally confused as to the extent of his estate, and apparently had no recollection of the two probate proceedings in which he was the moving party.

The rule to be applied in determining whether a deed may be avoided for lack of mental competency is well established in this state. It is considered sufficient if the person has enough mental capacity to understand, to a reasonable extent, the nature and effect of what he is doing. 2 Dunnell, Dig. & Supp. § 1731; Parrish v. Peoples, 214 Minn. 589, 9 N. W. (2d) 225; Trost v. Brey, 156 Minn. 242, 194 N. W. 617; Rogers v. Central L. & I. Co. 149 Minn. 347, 183 N. W. 961. Measured by this test and considering the record in its entirety, we believe the evidence reasonably sustains the court's finding of incompetency. Big Stone County Bank v. Hoban, 175 Minn. 428, 221 N. W. 644; Clark v. Quade, 175 Minn. 522, 221 N. W. 907. A finding the other way would be sustained by the record. As a court of review, however, it is not for us to weigh the evidence. That responsibility rests upon the trier of fact. We conclude that the evidence is sufficient reasonably to sustain the finding of incompetency.

In view of our determination of the issue of mental incompetency adversely to defendant, a discussion of the question of undue influence becomes unnecessary.

■ There is a defect in the title to the action. Plaintiff should have been designated "Arne K. Rebne, by J. F. Schneider, his legal guardian." 3 Dunnell, Dig. & Supp. §§ 4332 and 4453; Richardson v. Kotek, 123 Minn. 360, 143 N. W. 973; Johnson v. Colp, 211 Minn. 245, 300 N. W. 791; Parrish v. Peoples, 214 Minn. 589, 9 N. W. (2d) 225, *supra*. We have amended the title to conform to this rule.

Affirmed.

MR. JUSTICE STREISSGUTH took no part in the consideration or decision of this case.